STATE OF NORTH CAROLINA v. MARK TITUS HARRIS

No. COA02-233

(Filed 20 May 2003)

**1. Drugs— maintaining and keeping a dwelling for keeping or selling a controlled substance—motion to dismiss—sufficiency of evidence**

The trial court erred by denying defendant's motion to dismiss the charge of maintaining and keeping a dwelling for keeping or selling a controlled substance under N.C.G.S. § 90-108(a)(7), because: (1) the State only presented evidence that defendant was seen at the house several times over a period of two months and that an officer had spoken to defendant twice during that time; (2) there was no other evidence linking defendant to the house apart from personal property of defendant found in the bedroom; and (3) the State offered no evidence that defendant owned the property, bore any expense of renting or maintaining the property, or took any other responsibility for the property.

**2. Confessions and Incriminating Statements— statement inquiring about keys to truck—custodial interrogation—cocaine—inevitable discovery doctrine**

Assuming that a detective's inquiry about whether defendant had keys to an old truck amounted to custodial interrogation without Miranda warnings, defendant's response that he had the keys and cocaine found in the truck's tool box by use of the keys were properly admitted in a prosecution for trafficking in and possession of cocaine because: (1) there was no reasonable possibility that the exclusion of defendant's statement that he had keys would have resulted in a different verdict when the keys to the old truck were in defendant's front jeans pocket and there was no suggestion that the jeans belonged to anyone else; (2) defendant made no attempt to demonstrate that he was subjected to actual coercion; and (3) the keys and cocaine would

still have been admissible under the inevitable discovery doctrine when the officers had a search warrant authorizing them to search defendant's person.

**3. Search and Seizure— motion to suppress—validity of search warrant**

  The trial court did not err in a trafficking in cocaine, possession of cocaine, and knowingly maintaining a place to keep a controlled substance case by denying defendant's motion to suppress evidence obtained in a search based on an alleged improper warrant, because the magistrate's decision to issue the warrant was adequately supported.

**4. Constitutional Law; Taxes— North Carolina drug tax— double jeopardy not implicated**

  The trial court did not violate defendant's double jeopardy rights in a trafficking in cocaine, possession of cocaine, and knowingly maintaining a place to keep a controlled substance case by failing to grant defendant's motion to dismiss the charges after his payment of $2.117.74 under the North Carolina drug tax.

**5. Drugs— possession of cocaine—failure to arrest judgment**

  The trial court did not err by consolidating the possession and trafficking in cocaine charges into one judgment and by failing to arrest judgment as to the jury's verdict of possession of cocaine, because the legislature's intent was to proscribe and punish separately the offenses of felonious possession of cocaine and of trafficking in cocaine by possession.

  Appeal by defendant from judgment entered 6 September 2001 by Judge David Q. LaBarre in Orange County Superior Court. Heard in the Court of Appeals 21 January 2003.

  *Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.*

  *Jeffrey Evan Noecker, for defendant-appellant.*

  GEER, Judge.

  Defendant Mark Titus Harris was convicted of trafficking in cocaine, possession of cocaine, and knowingly maintaining a place to keep a controlled substance. On appeal, defendant argues that the

trial court erred in: (1) failing to dismiss the charge of knowingly maintaining a place to keep a controlled substance for lack of sufficient evidence; (2) admitting into evidence, over a Fifth Amendment objection, defendant's statement to one of the officers and physical evidence located as a result of that statement; (3) denying defendant's motion to suppress evidence obtained in a search based on an improper warrant; (4) failing to grant defendant's motion to dismiss based on his argument that defendant's criminal prosecution, after his payment of the North Carolina drug tax, violated his constitutional right not to be twice put in jeopardy for the same offense; and (5) failing to arrest judgment as to the jury's verdict of possession of cocaine. We agree that the trial court should have dismissed as unsupported by the evidence the charge of knowingly maintaining a place to keep a controlled substance, but find the remaining arguments without merit. We therefore affirm in part and reverse in part.

Facts

In June 2000, Detective Dexter Davis heard from a confidential informant that cocaine was being sold at 116-B Daphine Drive, a duplex in Hillsborough, North Carolina. Detective Davis and other officers had seen defendant at that duplex before and had talked to him on two occasions. Detective Davis obtained a search warrant to search apartment B of the duplex, a blue van on the premises, and the person of defendant.

On 2 June 2000, Detective Davis and other police officers went to the duplex to serve the search warrant. The officers knocked on the door and announced, "Police. Search warrant. Open the door[.]" When no one opened the door, the officers used force to enter and secured five people inside, including defendant.

After patting down the five people, the officers removed them from the duplex and conducted a search pursuant to the warrant. In the course of the search, the officers found a razor on a plate with a white substance, plastic baggies cut in a manner used for the sale of drugs, a digital scale, baking soda in the refrigerator (often used as a cutting agent for cocaine), several firearms and ammunition, a small amount of marijuana, and a small rock of cocaine.

In the bedroom dresser, the officers found various personal papers of defendant, including pieces of identification for defendant, pay records of defendant, and a photo album stipulated by defendant

to belong to him that contained photos of an old truck parked approximately eight feet from the duplex. None of the personal papers of defendant found in the search listed the address for the duplex as defendant's address. The officers did find a water bill for the duplex apartment in the name of Jacob Burton—consistent with the Town of Hillsborough records—and a power bill for the duplex apartment in the name of Iris Cameron.

During the search of the apartment, defendant was kept outside in handcuffs with Officer Holloway standing next to him. Officer Holloway testified that he patted down defendant and although he found no weapons, he did find a large amount of cash that he put back in defendant's pocket.

Detectives Chappell and Fredrick searched the old rusted Ford truck in the photos. After finding a locked toolbox on the side of the truck closest to the duplex, Detective Chappell asked defendant if he had any keys and defendant said that he had. No evidence was presented that defendant had been given Miranda warnings prior to Detective Chappell's asking him if he had any keys. Detective Chappell removed a set of keys from defendant's front jeans pocket and opened the locked compartment with one of the keys. Inside the compartment was a plastic bag of white powder later determined to contain 36.2 grams of cocaine. Defendant was then arrested.

No documents showed that defendant owned the truck. A police officer testified, however, that in 1999, the officer had stopped defendant while defendant was driving the truck.

On 5 June 2000, defendant was charged with trafficking in cocaine, possession with intent to sell and/or deliver cocaine, and knowingly and intentionally maintaining a place to keep a controlled substance. A grand jury indicted defendant on all three charges on 9 October 2000. On 8 January 2001, defendant filed a motion to suppress all evidence that resulted from the search on 2 June 2000. Defendant also made a motion to dismiss the charges of maintaining a house used for keeping and selling controlled substances, trafficking in cocaine, and possession with intent to sell and/or deliver cocaine. The court denied defendant's motions prior to trial. On 6 September 2001, a jury convicted defendant of trafficking in cocaine, possession of cocaine (as a lesser included offense of possession with intent to sell or deliver), and knowingly maintaining a place to keep a controlled substance (as a lesser

STATE v. HARRIS

[157 N.C. App. 647 (2003)]

included offense of intentionally maintaining a place to keep a controlled substance).[1]

I

**[1]** Defendant contends first that the trial court erred in failing to dismiss for lack of sufficient evidence the charge of maintaining a place to keep a controlled substance.

> "In reviewing the denial of a motion to dismiss, this Court must examine the evidence adduced at trial in the light most favorable to the State to determine if there is substantial evidence of every essential element of the crime. Evidence is 'substantial' if a reasonable person would consider it sufficient to support the conclusion that the essential element exists."

*State v. Williams*, 151 N.C. App. 535, 539, 566 S.E.2d 155, 159 (quoting *State v. McKinnon*, 306 N.C. 288, 289, 293 S.E.2d 118, 125 (1982)), *cert. denied*, 356 N.C. 313, 571 S.E.2d 214 (2002).

N.C. Gen. Stat. § 90-108(a)(7) (2001) makes it unlawful for any person "[t]o knowingly keep or maintain any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, . . . which is used for the keeping or selling of [a controlled substance] in violation of this Article . . . ." Whether a person "keeps or maintains" a dwelling requires consideration of various factors, none of which is dispositive, including ownership of the property, occupancy of the property, repairs to the property, payment of taxes, payment of utility or repair expenses, and payment of rent. *State v. Bowens*, 140 N.C. App. 217, 221, 535 S.E.2d 870, 873 (2000), *disc. review denied*, 353 N.C. 383, 547 S.E.2d 417 (2001).

*Bowens* compels the conclusion that the State, in this case, offered insufficient evidence to establish a violation of N.C. Gen. Stat. § 90-108(a)(7). In *Bowens*, this Court held that a motion to dismiss should have been granted when "[t]here [was] no evidence Defendant was the owner or the lessee of the dwelling, or that he had any responsibility for the payment of the utilities or the general upkeep of the dwelling." *Id.* at 222, 535 S.E.2d at 873. The Court pointed out that the State's evidence showed only that:

---

1. "Intentionally" maintaining a place for the purpose of keeping or selling a controlled substance is a Class I felony. N.C. Gen. Stat. § 90-108(b). The jury declined to find that defendant acted intentionally, but instead found that he was guilty of knowingly maintaining a place to keep a controlled substance, a Class 1 misdemeanor under N.C. Gen. Stat. § 90-108(a)(7).

Defendant was seen in and out of the dwelling 8-to-10 times over the course of 2-to-3 days; nobody else was seen entering the premises during this 2-to-3 day period of time; men's clothing was found in one closet in the dwelling; Branch testified he believed Defendant lived at 1108 Carolina Street, although he offered no basis for that opinion and had not checked to see who the dwelling was rented to or who paid the utilities and telephone bills.

*Id.* at 221-22, 535 S.E.2d at 873. This Court held that such evidence did not amount to substantial evidence of a violation of N.C. Gen. Stat. § 90-108(a)(7):

Testimony Defendant was present at the dwelling on several occasions and testimony he lived "[a]t 1108 Carolina Street" cannot alone support a conclusion Defendant kept or maintained the dwelling. Although men's clothing was found in the dwelling, there is no evidence the clothes belonged to Defendant. Accordingly, Defendant's motion to dismiss the charge of maintaining a dwelling to keep or sell controlled substances should have been granted.

*Id.* at 222, 535 S.E.2d at 873.

In this case, the State presented evidence only that defendant was seen at the house several times over a period of two months and that an officer had spoken to defendant twice during that time. There is no other evidence linking defendant to the house apart from personal property of defendant found in the bedroom. At most, this evidence supports a finding that defendant occupied the property from time to time although none of defendant's personal papers listed the duplex as defendant's address. The State offered no evidence that defendant owned the property, bore any expense of renting or maintaining the property, or took any other responsibility for the property. This evidence is indistinguishable from the facts of *Bowens* and other decisions in which this Court has held that a motion to dismiss should have been granted. *See also State v. Kraus,* 147 N.C. App. 766, 768-69, 557 S.E.2d 144, 147 (2001) (occupancy of hotel room insufficient evidence when State offered no evidence that defendant bore the expense of the room); *State v. Hamilton,* 145 N.C. App. 152, 154, 549 S.E.2d 233, 235 (2001) (evidence insufficient when State showed only that defendant was often at the apartment leased by his girlfriend). The trial court should have granted defendant's motion to

STATE v. HARRIS

[157 N.C. App. 647 (2003)]

dismiss the charge of maintaining and keeping a place to keep or sell·a controlled substance.

## II

[2] Defendant next contends that Detective Chappell's question to defendant—"if he had any keys"—amounted to custodial interrogation and because defendant was not given his Miranda warnings, his response and all physical evidence obtained as a result of that interrogation should have been excluded. Assuming without deciding that Detective Chappell's inquiry about keys amounted to custodial interrogation, we hold that admission of defendant's response was harmless beyond a reasonable doubt and admission of the physical evidence was in any event permissible.

In *State v. Phelps*, 156 N.C. App. 119, 575 S.E.2d 818 (2003), a police officer recommended to defendant that he tell the officer if he had any illegal substances in his possession before they reached the jail. The defendant responded that he had crack cocaine in his front coat pocket. *Id.* at 121, 575 S.E.2d at 820. This Court held that admission of defendant's statement was harmless beyond a reasonable doubt since the cocaine was in the pocket of a coat worn by defendant and there was no evidence to suggest that defendant did not own the coat or that it had recently come into his possession. *Id.* at 124, 575 S.E.2d at 822. The facts of this case are indistinguishable. The keys to the old truck were in defendant's front jeans pocket along with other keys belonging to defendant and there has been no suggestion that the jeans belonged to anyone else. As a result, there is no reasonable possibility that the exclusion of defendant's statement—that he had keys—would have resulted in a different verdict. *Id.*

With respect to admission of the truck keys and the cocaine found in the truck's tool box, in *Phelps*, this Court construed *State v. May*, 334 N.C. 609, 612-13, 434 S.E.2d 180, 182 (1993), *cert. denied*, 510 U.S. 1198, 127 L. Ed. 2d 661 (1994), as holding that physical evidence obtained in violation of *Miranda* is admissible unless obtained as a result of actual coercion.[2] *Phelps*, 156 N.C. App. at 124-25, 575 S.E.2d at 822. Defendant has made no attempt to demonstrate that he was subjected to actual coercion.

---

2. This Court recognized that the decision in *May* could be called into doubt by *Dickerson v. United States*, 530 U.S. 428, 147 L. Ed. 2d 405 (2000), but·noted that the Court of Appeals is bound by *May* unless and until our Supreme Court holds otherwise. *Phelps*, 156 N.C. App. at 125 n.1, 575 S.E.2d at 822 n.1.

Even assuming that defendant could point to evidence of coercion, the keys and cocaine would still have been admissible under the inevitable discovery doctrine:

> "Under the inevitable discovery doctrine, evidence which is illegally obtained can still be admitted into evidence as an exception to the exclusionary rule when "the information ultimately or inevitably would have been discovered by lawful means." . . . Under this doctrine, the prosecution has the burden of proving that the evidence, even though obtained through an illegal search, would have been discovered anyway by independent lawful means."

*State v. Woolridge*, 147 N.C. App. 685, 689, 557 S.E.2d 158, 160-61 (2001) (quoting *U.S. v. Nix*, 467 U.S. 431, 444, 81 L. Ed. 2d 377, 387-88 (1984)), *disc. review granted*, 356 N.C. 624, 575 S.E.2d 761 (2002). The question in this case is whether officers would have inevitably located the truck keys even without defendant's acknowledgment that they were in his jeans pocket.

There is no dispute that the officers had a search warrant specifically authorizing them to search defendant's person. Had defendant refused to answer the question about the keys, the officers would have been able to lawfully search defendant and necessarily would have found the keys in defendant's front jeans pocket. *See Phelps*, 156 N.C. App. at 126, 575 S.E.2d at 823 (cocaine in coat pocket would have been inevitably discovered when defendant reached the jail and was searched during processing); *State v. Vick*, 130 N.C. App. 207, 218, 502 S.E.2d 871, 878 (drugs in refrigerator would have been inevitably discovered when police searched premises pursuant to search warrant), *disc. review denied*, 349 N.C. 376, 525 S.E.2d 464, and *appeal dismissed*, 349 N.C. 376, 525 S.E.2d 465 (1998). This assignment of error is overruled.

III

[3] Defendant argues that the trial court should have granted his motion to suppress on the grounds that the affidavit supporting the application for the search warrant was insufficient to establish probable cause. It is well established that the standard for a court reviewing the issuance of a search warrant is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. *State v. Reid*, 151 N.C. App. 420, 423, 566 S.E.2d 186, 189 (2002). After a careful review of the record, we find that substantial

evidence exists in the record to support the magistrate's issuance of the search warrant.

Defendant bases his argument on *State v. Johnson*, 143 N.C. App. 307, 547 S.E.2d 445 (2001), in which this Court held that the information in the warrant application *was sufficient* to support the finding of probable cause. The fact that the warrant application in the case before us was not as detailed as the one in *Johnson* does not necessarily lead to the conclusion that the present application was insufficient. *Johnson* did not purport to set a floor with respect to the amount of detail required in a search warrant application.

By contrast, in *State v. Marshall*, 94 N.C. App. 20, 27, 380 S.E.2d 360, 364, *disc. review denied and appeal dismissed*, 325 N.C. 275, 384 S.E.2d 526 (1989), this Court considered a warrant application virtually identical to the one submitted in this case and found that the application provided a sufficient basis for the magistrate to issue a search warrant. We therefore hold that the magistrate's decision to issue the warrant in this case was adequately supported and the trial court properly denied defendant's motion to suppress.

## IV

[4] Prior to his criminal trial, defendant was assessed in a civil proceeding with a "drug tax" of $2,117.74. This amount was paid out of the cash found on defendant at the time he was arrested. Defendant contends that payment of the drug tax gave rise to double jeopardy.

Defendant's argument has already been rejected by this Court in *State v. Woods*, 136 N.C. App. 386, 524 S.E.2d 363, *disc. review denied*, 351 N.C. 370, 543 S.E.2d 147 (2000):

Defendant bases his claim of double jeopardy on the North Carolina Department of Revenue's collection of unpaid taxes on the seized drugs pursuant to the North Carolina Controlled Substance Tax Act, N.C. Gen. Stat. §§ 105-113.105 through 105-113.113 (1995) ("Drug Tax") in addition to prosecution against him in this case. . . . Defendant contends the trial court's ruling must be reversed pursuant to *Lynn v. West*, 134 F.3d 582, 593-94 (4th Cir.), *cert. denied*, 525 U.S. 813, 142 L. Ed. 2d 36 (1998), where the Fourth Circuit held that the North Carolina Drug Tax constitutes criminal punishment. The State asserts the trial court correctly denied defendant's motion to dismiss under *State v. Adams*, 132 N.C. App. 819, 513 S.E.2d 588, 589, *disc. rev.*

*denied,* 350 N.C. 836, —— S.E.2d ——, *cert. denied,* —— U.S. ——, 145 L. Ed. 2d 414 (1999), where a panel of this Court upheld assessment and collection of the Drug Tax against a challenge under the Double Jeopardy Clause. As we noted in *Adams*, with the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State. *Id.* Absent modification by our Supreme Court, a panel of this Court is bound by the prior decision of another panel addressing the same issue. *Id.* Accordingly, we are bound by our decision in *Adams* and defendant's assignment of error based on double jeopardy fails.

*Id.* at 389-90, 524 S.E.2d at 365. *See also State v. Crenshaw,* 144 N.C. App. 574, 551 S.E.2d 147 (2001); *State v. Wambach,* 136 N.C. App. 842, 526 S.E.2d 212 (2000). This assignment of error is overruled.

V.

**[5]** Defendant further argues that the trial court erred in consolidating the possession and trafficking charges into one judgment, contending that the court should instead have arrested judgment as to the possession charge. Defendant bases his argument on *State v. Fletcher,* 27 N.C. App. 672, 220 S.E.2d 101 (1975), in which this Court held that when a defendant was convicted of both armed robbery and the lesser-included offense of assault with a deadly weapon, judgment should have been arrested as to the assault with a deadly weapon charge.

Under *State v. Pipkins,* 337 N.C. 431, 433-34, 446 S.E.2d 360, 362 (1994), however, a court may impose multiple punishments in a single trial for the same conduct when the legislature has expressed a clear intent to proscribe and punish that same conduct under separate statutes. The *Pipkins* Court addressed the exact offenses that are at issue here—possession of cocaine and trafficking in cocaine—and "conclude[d] that the legislature's intent was to proscribe and punish separately the offenses of felonious possession of cocaine and of trafficking in cocaine by possession." *Id.* at 434, 446 S.E.2d at 363. Under *Pipkins,* the trial court in this case did not err in failing to arrest judgment as to the jury's verdict on the possession charge.

For the foregoing reasons, we reverse the trial court's ruling on defendant's motion to dismiss as to the charge of maintaining and keeping a dwelling for keeping or selling a controlled substance. We affirm as to the remaining assignments of error.

Reversed in part, affirmed in part.

Judges WYNN and BRYANT concur.